# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| In re:<br><br>**VICTOR HUGO SANCHEZ.**<br><br>Debtor. | Chapter 7<br><br>Case No. 21-51206 |
| **DOCTORS HOSPITAL AT RENAISSANCE, LTD. AND RGV MED, LLC,**<br><br>Plaintiffs,<br><br>vs.<br><br>**VICTOR HUGO SANCHEZ,**<br><br>Defendant. | Adversary No. _____ |

## COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY

Plaintiffs, Doctors Hospital at Renaissance, Ltd. and RGV Med, LLC, judgment creditors of the debtor Victor Hugo Sanchez ("Debtor"), file this *Complaint for Determination of Non-Dischargeability* (the "Complaint"), pursuant to section 727(a) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), and alleges as follows:

### I. PARTIES

1. Plaintiff Doctors Hospital at Renaissance, Ltd. is a Texas limited partnership that owns a hospital in McAllen, Texas, located at 5501 S. McColl Road, Edinburg, TX, 78539.

2. Plaintiff RGV Med, LLC is a Texas limited liability company that serves as the general partner of Doctor's Hospital at Renaissance, Ltd. Its address is P.O. Box 3293, McAllen, Texas 78502.

3. Defendant Victor Hugo Sanchez ("Sanchez" or "Debtor") is an individual citizen of the State of Texas who commenced the related bankruptcy case by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 4, 2021 (the "Petition Date"). On information and belief, the Debtor may be served through his bankruptcy counsel, Michael J. O'Connor, located at 921 Proton Road, San Antonio, Texas 78258; or at the Debtor's principal residence, located at 7835 Smokey View, Boerne, Texas 78015; or wherever he may be found.

## II. JURISDICTION AND VENUE

4. Plaintiffs commence this proceeding pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Court has jurisdiction over this adversary proceeding pursuant to section 1334 of title 28 of the United States Code, and the Court may enter final orders and judgments with respect to this proceeding, as it is a core proceeding pursuant to section 157(b)(2)(I) of title 28 of the United States Code.

5. Venue of the bankruptcy case is proper in this District under section 1408(1) of title 28 of the United States Code, as the Debtor is a resident of Bexar County, Texas. Accordingly, venue of this adversary proceeding is proper in this District pursuant to section 1409 of title 28 of the United States Code.

### III. SUMMARY OF THE COMPLAINT

6. This Complaint arises out of the Debtor's fraudulent concealment of assets and false statements made by the Debtor in connection with his bankruptcy case. Specifically, information obtained by Plaintiffs in pre-petition, post-judgment discovery—while attempting to collect on a state-court judgment of $482,202.98 entered in favor of Plaintiffs against the Debtor—contradicts financial representations made by the Debtor in his bankruptcy schedules and exposes that the Debtor fraudulently concealed assets.

7. By this Complaint, Plaintiffs seek a determination that Defendant is not entitled to a discharge of his debts pursuant to sections 727(a)(2) and 727(a)(4) of the Bankruptcy Code.

### IV. FACTS

8. Plaintiffs repeat and incorporate by reference all previous allegations of this Complaint.

9. On or about August 16, 2017, Sanchez and a limited partnership he created, SM3 Investments, Ltd. ("SM3"),[1] initiated, as claimants, an arbitration proceeding with the American Arbitration Association (the "Arbitration") against Plaintiffs Doctor's Hospital at Renaissance, Ltd. and its general partner, RGV Med, LLC (together, "Doctor's Hospital" or "Plaintiffs").

10. The Arbitration panel entered a Final Award on December 17, 2018. The Final Award rejected all of the claims asserts by Sanchez and SM3, and

---

[1] The Debtor lists SM3 as a co-debtor in the underlying bankruptcy case. *See* Schedules at 32.

awarded Plaintiffs their attorneys' fees and costs, holding that "Claimants shall be liable, jointly and severally, to pay to Respondents . . . $435,880.21 in attorney's fees and costs; and $46,322.77, representing fees and expenses in excess of the arbitration's apportioned costs."

11. Shortly thereafter, on January 7, 2019, Plaintiffs filed a Petition to Confirm Arbitration Award in the 332nd Judicial District Court in Hidalgo County, Texas, Cause No. C-0084-19-F. The district court entered an order confirming the arbitration award and entering final judgment against Sanchez and SM3 on August 12, 2019 in the amount of $482,202.98 plus pre- and post-judgment interest at 5% (the "Debt").

12. Plaintiffs then commenced post-judgment discovery in an attempt to collect the Debt. In addition to various writs and abstracts obtained and filed during post-judgment collection efforts, Plaintiffs took Sanchez's deposition on June 29, 2021 (the "Post-Judgement Deposition").

13. Approximately five months after the Post-Judgment Deposition, while Plaintiffs were actively attempting to execute on Sanchez's non-exempt personal property, Sanchez filed the underlying bankruptcy case.

14. Sanchez's testimony during the Post-Judgment Deposition is consistent with other statements made under oath during the Arbitration, including a sworn deposition taken on February 22, 2018 during discovery in the Arbitration and sworn testimony on October 17, 2018 during the final hearing in the Arbitration. However, many of Sanchez's pre-petition representations about his

finances and the value of his assets directly contradict what is represented in his bankruptcy schedules [Docket No. 6, pages 1-40] (the "Schedules") and his statement of financial affairs [Docket No. 6, pages 41-61] ("SOFA").

A. **Sanchez diverts income into a company he owns and uses that company to pay his personal expenses.**

15. Sanchez previously testified that pre-petition income he earned was deposited into the bank account of an entity named Chioggia Oil & Gas, LLC ("Chioggia"), a company that Sanchez said "had no business," generated no income, and "wasn't doing anything."[2] Per Sanchez, that income is for "monthly charges for consulting" that Sanchez earns from two companies: Finek Texas, Ltd. ("Finek") and Financial Management International, Inc. ("FMI").[3] He received (and presumably continues to receive) these fees on a monthly basis, the amount of which "varies, sometimes two thousand, sometimes five thousand, sometimes four, sometimes nothing."[4]

16. Sanchez further testified that the money "goes to Chioggia on [Sanchez's] behalf as a consulting fee" and is then used to pay Sanchez's personal expenses out of Chioggia.[5] According to Sanchez, Chioggia exists "so that [he] can

---

[2] *See* Sanchez testimony during the Arbitration final hearing (hereinafter "Arbitration Testimony") at 47-51.

[3] Post-Judgment Depo. at 64.

[4] Id. at 74.

[5] Id. at 70-71.

expense things through that entity."[6] In other words, "Chioggia pays [Sanchez's] personal expenses and then [Chioggia] writes them off."[7]

**B.    Sanchez owns an art collection that he values between $155,000 and $170,000.**

17.    In 2014, Sanchez provided a financial statement to the U.S. Small Business Administration in connection with his application for an SBA loan. In the financial statement, he assigned a value of $310,000 to his art collection. During his Post-Judgment Deposition, Sanchez testified that he suspects that a few of the paintings in his collection are forgeries, but that the known originals remain valued, collectively, between $155,000 and $170,000.

18.    Specifically, he testified in June 2021 that he possesses three paintings by Luis Sottil that are valued "at least [$]25,000 each" and two paintings by Joaquin Claussel that "could be worth at least between 40 and 50 thousand each."[8]

### V.  CAUSES OF ACTION

### First Claim for Relief

### Non-dischargeability under § 727(a)(2) for fraudulent concealment of assets

19.    Plaintiffs repeat and incorporate by reference all previous allegations of this Complaint.

20.    During the twelve months preceding the Debtor's bankruptcy filing, the Debtor continuously concealed property with the actual intent to hinder, delay,

---

[6]    Id. at 64.

[7]    Id. at 78.

[8]    Post-Judgement Depo. at 104-105.

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY

777884.1                                        6

or defraud Plaintiffs and other creditors. In this case, the property that the Debtor fraudulently concealed consisted of income earned by the Debtor but deposited in Chioggia's bank account, and then used to pay the Debtor's personal expenses. The concealment and subsequent use of the property hindered and delayed Plaintiffs' ability to collect the Debt.

21. Arising from the Debtor's conduct, the debts owed by the Debtor, including the Debt owed to Plaintiffs, should be characterized as non-dischargeable under section 727(a)(2) of the Bankruptcy Code.

## Second Claim for Relief

### Non-dischargeability under § 727(a)(4)(A) for making false oaths or accounts

22. Plaintiffs repeat and incorporate by reference all previous allegations of this Complaint.

23. Approximately five months prior to the Petition Date, the Debtor testified under oath at the Post-Judgement Deposition. Numerous statements made during the Post-Judgement Deposition contradict and are irreconcilable with statements made on the Debtor's Schedules and SOFA, constituting "false oath[s] and account[s]" under the Bankruptcy Code. *See* 11 U.S.C. § 727(a)(4)(A).

24. The Debtor's false oaths or accounts include the following:

    (i)    In the section of the Schedules identifying assets, the Debtor values his "collectibles of value" at $8,075.00.[9] A continuation page itemizes said collectibles and assigns value as follows: two Claussel paintings valued at $1,500.00 and $0.00; three Sottil

---

[9] Schedules at 5.

  paintings valued at $8,000.00, $3,000.00, and $3,000.00.[10] The painting are valued low enough for the Debtor to claim an exemption for all five paintings; such values, however, directly contract the Debtor's sworn testimony five months prior to the Petition Date that the five paintings have a value, collectively, between $155,000 and $170,000.[11]

(ii) In the section of the Schedules regarding the Debtor's income, he lists $0.00 for "monthly gross wages, salary, and commissions" and $1,500 as "other monthly income", adding the note "Fenik & Chioggia".[12] These representations contradict the Debtor's Post-Judgment Deposition testimony, in which he stated that the consulting fees he earned, but that were deposited into Chioggia's bank account on the Debtor's behalf, were significantly and materially higher than $1,500 per month.[13]

(iii) In the section of the SOFA related to the Debtor's income, he lists gross income of $4,000 for 2021 (pre-petition), $30,000.00 for 2020, and $6,133.00 for 2019.[14] These representations contradict the Debtor's Post-Judgment Deposition testimony, in which he stated that the consulting fees he earned, but that were deposited into Chioggia's bank account on the Debtor's behalf, significantly and materially exceeded the "gross income" amounts listed in the SOFA.

(iv) In the section of the Schedules regarding the Debtor's expenses, he lists total monthly expenses of $3,720.00. This statement cannot be squared with the Debtor's Post-Judgement Deposition testimony, where the Debtor stated that he runs his personal expenses through Chioggia, which then writes off the expenses. If the Debtor's personal expenses are being claimed by Chioggia, they cannot also be claimed by the Debtor as his individual personal expenses.

25. Each of the Debtor's false representations constitute a "false oath or account" under the Bankruptcy Code. These false representations are material, and

---

[10]   *Id.* at 13.

[11]   Post-Judgment Depo. at 104-05.

[12]   Schedules at 33-34.

[13]   Post-Judgement Depo. at 74.

[14]   SOFA at 42.

**COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY**
777884.1                 8

the Debtor made them knowingly and fraudulently. Accordingly, his debts, including the Debt owed to Plaintiffs, are non-dischargeable under section 727(a)(4)(A) of the Bankruptcy Code.

### Third Claim for Relief

**Attorneys' fees and costs related to this Complaint**

26. Plaintiffs repeat and incorporate by reference all previous allegations of this Complaint.

27. Plaintiffs have been forced to incur attorneys' fees and costs in connection with the filing and prosecution of this Complaint. Plaintiffs request an award for such attorneys' fees and costs incurred in the filing and prosecution of this Complaint to the extent allowed under the Bankruptcy Code and Texas law. *See* 11 U.S.C. § 105(a) & 727(a).

### VI. PRAYER

WHEREFORE, the Plaintiffs respectfully request that the Court enter judgment for the Plaintiff:

(i) Determining that the Debt is non-dischargeable under 11 U.S.C. § 727(a)(2);

(ii) Determining that the Debt is non-dischargeable under 11 U.S.C. § 727(a)(4)(A);

(iii) Awarding Plaintiffs reasonable attorneys' fees and expenses incurred in connection with the filing and prosecution of this Complaint; and

(iv) Any other such relief as is fair and appropriate.

*[signature page follows]*

DATED: January 11, 2022

       **ROSENTHAL PAUERSTEIN SANDOLOSKI AGATHER LLP**

       Stephen K. Lecholop II
       State Bar No. 24070119
       755 E. Mulberry Ave., Suite 200
       San Antonio, Texas 78212
       Tel: (210) 244-8836
       Fax: (210) 244-8936
       slecholop@rpsalaw.com

       By: */s/ Stephen K. Lecholop II*
       Stephen K. Lecholop II

       **ATTORNEYS FOR PLAINTIFFS DOCTOR'S HOSPITAL AT RENAISSANCE, LTD. AND RGV MED, LLC**